JDL:TJS
F.#2011R00736/NY-NYE-673

# 12 M 534

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

STEVEN SCIARRINO,
SALVATORE PARKER,
SCOTT MOSKOWITZ, and
STANLEY MOSKOWITZ,

            Defendants.

**TO BE FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR ARREST
WARRANTS

(21 U.S.C. § 846, 18 U.S.C.
1956(h))

EASTERN DISTRICT OF NEW YORK, SS:

       GIOVANNA CITTI, being duly sworn, deposes and states

that she is a Special Agent with the Drug Enforcement

Administration ("DEA"), duly appointed according to law and

acting as such.

       Upon information and belief, on or about and between

July 2007 and October 2011, both dates being approximate and

inclusive, within the Eastern District of New York and elsewhere,

the defendants STEVEN SCIARRINO, SALVATORE PARKER and SCOTT

MOSKOWITZ, together with others, did knowingly and intentionally

conspire to distribute and possess with intent to distribute a

controlled substance, which offense involved a substance

containing oxycodone, a Schedule II controlled substance, in

violation of 21 U.S.C. § 841(a)(1).

       (Title 21, United States Code, Section 846).

       Upon information and belief, on or about and between

September 2010 and October 2011, both dates being approximate and

inclusive, within the Eastern District of New York and elsewhere,

the defendant STANLEY MOSKOWITZ, together with others, did knowingly and intentionally conspire to conduct one or more financial transactions, in and affecting interstate and foreign commerce, which transactions in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the transactions represented the proceeds of some form of unlawful activity, (a) with the intent to promote the carrying on of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(A)(i), and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, contrary to Title 18, United States Code, Section 1956(a)(1)(B);

The source of your deponent's information and the grounds for her belief are as follows:[1]/

1.   I have been a Special Agent with the DEA for approximately two years.  My information in this case comes from a review of DEA records, conversations with other agents, and my direct participation in the investigation.

I.   Background

2.   Starting in 2010, DEA agents have been investigating an oxycodone distribution ring led by LANCE

---

[1]/ Because the purpose of this affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

MOSKOWITZ ("LANCE").  At that time, LANCE was in the custody of the Bureau of Prisons serving a sentence of three years imprisonment for a violation of federal probation.[2/]  DEA agents obtained recorded prison telephone conversations and emails of LANCE MOSKOWITZ for the time period August 2010 through June 2011, obtained New York Bureau of Narcotics Enforcement records of oxycodone purchases, conducted surveillance, and cultivated confidential informants.  As described more fully below, based on this and other evidence, I believe that LANCE MOSKOWITZ was the leader of an organization that distributes oxycodone pills; his sister, LORIANN MOSKOWITZ ("LORIANN"), managed the day to day operation of the organization while LANCE was incarcerated; STEVEN SCIARRINO obtained oxycodone pills and distributed pills; SALVATORE PARKER distributed oxycodone pills; LANCE's brother, SCOTT MOSKOWITZ, obtained oxycodone pills; and LANCE's father, STANLEY MOSKOWITZ,  laundered proceeds of the business.

        3.    On October 25, 2011, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge, signed arrest warrants for

---

[2/] On September 10, 2008, LANCE MOSKOWITZ was sentenced before Judge Weinstein in the Eastern District of New York to five years probation for conducting an illegal gambling operation.  <u>See United State v. Lance Moskowitz</u>, 08-CR-76 (JBW).  On January 8, 2009, while on probation, LANCE was arrested by the New York City Police Department for criminal possession of cocaine.  On April 24, 2009, LANCE MOSKOWITZ pled guilty to violating his federal probation and was sentenced by Judge Weinstein to three years imprisonment which he is serving in the Federal Correctional Institution in Fairton, New Jersey.

LANCE and LORIANN and search warrants for the home of STANLEY MOSKOWITZ and his wife, 20 Topside Avenue, Staten Island, New York and two safety deposit boxes. A copy of that application is attached as Exhibit A. On October 26, 2011, LANCE and LORIANN were arrested pursuant to that warrant and a search was conducted of 20 Topside Avenue. On November 23, 2011, LANCE and LORIANN MOSKOWITZ were indicted by a grand jury in the Eastern District of New York for Conspiracy to Possess with Intent to Distribute Oxycodone. See United States v. Moskowitz, 11-CR-793 (WFK).

II. Probable Cause to Arrest STEVEN SCIARRINO

4. During the course of the investigation, DEA obtained records from the New York State Bureau of Narcotics Enforcement ("BNE") regarding the number of oxycodone pills purchased by STEVEN SCIARRINO at licensed pharmacies during the period July 2007 to October 2011. During this period, STEVEN SCIARRINO purchased approximately 11,490 30 milligram oxycodone pills that were prescribed by certain doctors and a physician's assistant. In approximately 21 months during that time period SCIARRINO obtained multiple 30 day prescriptions of oxycodone from different doctors within the same month.

5. A confidential informant ("CI") involved in the Moskowitz drug trafficking organization[3] identified SCIARRINO as

---

[3] Information provided by the CI has been independently corroborated in this case.

4

a member of the Moskowitz drug trafficking organization.  The CI indicated that several years ago, SCIARRINO and LANCE approached him/her about making money by seeing doctors to obtain oxycodone prescriptions.  The CI said that SCIARRINO also obtained oxycodone prescriptions for the organization and that the CI had seen SCIARRINO at the office of a doctor identified in SCIARRINO's BNE records obtaining an oxycodone prescription.  In addition, the CI stated that SCIARRINO acted as an enforcer for the organization when individuals did not pay debts. The CI also indicated that following LANCE's arrest in January 2009, LORIANN took over the organization.  The CI stated that shortly after that arrest SCIARRINO approached him/her about providing oxycodone pills to SCIARRINO instead of LORIANN.  The CI indicated that when LORIANN learned of this she stopped involving SCIARRINO in the drug trafficking operations.  However, SCIARRINO continued to collect prior drug debts on behalf of LANCE.

III. Probable Cause to Arrest SALVATORE PARKER

      6.  According to the CI, LANCE and LORIANN distribute the oxycodone that they obtain through SALVATORE PARKER, as well as other individuals.  The CI identified a booking photograph[4] of SALVATORE PARKER as "Sal" from a photo book.  The CI indicated that, prior to LANCE's incarceration, he/she had seen PARKER at a

---

[4] PARKER has a September 2008 arrest for Criminal Possession of a Weapon and Criminal Possession of Marijuana.

5

music store owned by LANCE on a number of occasions.  On several
occasions after PARKER arrived, the CI witnessed LANCE take an
oxycodone pill bottle and go with PARKER to a back room in the
store.  The CI then saw PARKER leave and LANCE return to the
front of the music store carrying a large sum of United States
currency, which he would count at the counter of the music store.

      7.  On February 14, 2011, I conducted surveillance on
30 Hanover Street, an address indicated to be SALVATORE PARKER's
residence based on public records checks.  At that time, I saw a
black Honda Pilot leaving 30 Hanover Street at approximately 6:30
p.m. and later identified that it was being driven by SALVATORE
PARKER.  I saw the black Honda Pilot park at several locations
that evening and at three points I saw unidentified individuals
approach the driver side of the vehicle and interact with PARKER
briefly before leaving.  Based on my training and experience, I
believe that PARKER was providing those individuals with
narcotics.

      8.  Toll records of a cellular telephone registered to
LORIANN MOSKOWITZ show over 250 telephone calls between LORIANN
and a phone registered to SALVATORE PARKER between October 2010
and July 2011.  PARKER is also referenced numerous times in
recorded prison conversations between LANCE and LORIANN.  On
February 5, 2011, LANCE and LORIANN had the following
conversation, in sum and substance and in part:

LANCE:     Yeah, cuz you still have to give daddy the old one, right?

LORIANN:   Yes.  But Sal is running behind.

LANCE:     But that's on the new one?

LORIANN:   That's sort of from both, to be honest.

LANCE:     He don't have it?

LORIANN:   Not yet.

LANCE:     Ok.

LORIANN:   He's giving me like drips and drabs.  So, you want to just give daddy one now, instead of nineteen something?

[...]

LORIANN:   Alright.  And then you know, when I see Sal, I'll give him the other, then I have, you know, what's coming for the next month already.

LANCE:     Ok.

LORIANN:   Alright?

LANCE:     Tell Sal, come on man, shape up.

LORIANN:   I already told him, from now on either you bring it to me up front or I'm not dealing at all anymore.

Based on my training and experience and knowledge of this investigation, I believe that LANCE and LORIANN were discussing the fact that PARKER was running behind on paying for oxycodone that he was selling for LANCE and LORIANN.

9.   On March 29, 2011, LANCE and LORIANN had the following conversation, in sum and substance and in part:

LANCE:     What, so we're all done?

7

LORIANN:    Not yet.  Umm, I gotta see Sal.

LANCE:      How's he doing?

LORIANN:    He's ok, I just talked to him yesterday, he knows
            I'm ready for him.  So, I'm gonna see him. . .

Toll records show that on March 28, 2011, LORIANN made and

received several texts from a telephone registered to SALVATORE

PARKER.  BNE records show that on March 25, 2011, LORIANN

received and filled a prescription for 180 30mg oxycodone pills.

Based on my training and experience and this investigation, I

believe that when LORIANN stated that "he knows I'm ready" she

was indicating that she had oxycodone for PARKER to pick up.

          10.  Later on March 29, 2011, LANCE and LORIANN had the

following conversation, in sum and substance and in part:

LORIANN:    . . . Obviously if Shady's dad comes through, then
            you know.  But, you know what, even if that
            doesn't come through, I'll just double up with
            Sal, he'll get done quicker.

LANCE:      Yeah, but then you gotta.

LORIANN:    No, he's coming with it from now on.  I refuse to
            do anything unless it's up front.

LANCE:      No, what was I gonna say?

LORIANN:    He's coming with, uh.

LANCE:      I know.

LORIANN:    Twelve CD's each.  He coming with, umm, twelve
            CD's each time.

LANCE:      Only one hundred twenty melodies? You said,
            twelve?

8

LORIANN:   Right, twelve each.

LANCE:     Only one hundred twenty melodies?  Oh, I see what
           you're saying. Oh ok.

LORIANN:   Instead of giving me ten, he's giving me twelve.

LANCE:     Oh, I got you, I understand.

LORIANN:   Got it?

LANCE:     Oh I see.  Ok. And then there's the.

LORIANN:   So, it's coming off the top.

Based on my training and experience and investigation, I believe
LANCE and LORIANN were discussing the fact that PARKER would be
paying twelve dollars for each oxycodone pill, instead of ten
dollars in order to pay off his debt.

IV.  <u>Probable Cause to Arrest SCOTT MOSKOWITZ</u>

        11.  According to the CI, SCOTT MOSKOWITZ also obtained
oxycodone pills for LANCE and LORIANN.  The CI indicated that
SCOTT MOSKOWITZ received prescriptions for oxycodone from one of
the doctors listed in SCOTT's BNE records.  BNE records show that
from January 2008 to April 2009, SCOTT received approximately 14
prescriptions for oxycodone from that same doctor.

        12.  The CI also indicated that, following LANCE's
arrest in January 2009, the CI was present when SCOTT picked up a
prescription for oxycodone in LANCE MOSKOWITZ's name at the
doctor's office.  BNE records show that on February 13, 2009 --
while LANCE was in custody -- a prescription for 180 30mg

oxycodone pills was written for LANCE MOSKOWITZ by the doctor and used to purchase the pills at a pharmacy.

13.  The CI indicated that on one occasion she/he arrived at LANCE's house as SCOTT was leaving.  LANCE showed the CI a bottle of oxycodone pills and indicated in the direction of SCOTT and stated, in sum and substance, "He shorted me."  The CI indicated that he understood this to mean that SCOTT had given LANCE less than a full prescriptions worth of oxycodone pills.

V.   Probable Cause to Arrest STANLEY MOSKOWITZ

14.  As indicated above, on October 26, 2011, agents executed a search warrant at 20 Topside Avenue, Staten Island, the home of STANLEY MOSKOWITZ and his wife.  STANLEY MOSKOWITZ was present during the search.  Agents advised STANLEY MOSKOWITZ of his Miranda rights, which he indicated he understood.  STANLEY then stated, in sum and substance and in part, that he would receive a quantity of United States currency each month from LORIANN that he would deposit into several of his personal bank accounts.  STANLEY stated that he knew the money from LORIANN was money for LANCE.  STANLEY claimed that he did not know exactly how LORIANN acquired the money for LANCE, but stated that he understood that LANCE should not be gaining money since he is incarcerated in federal prison.  STANLEY also showed agents a log detailing money that he was receiving on LANCE's behalf, as well as expenses that he was paying for LANCE (the "Money Log").

STANLEY stated that each notation of "D/P" or "D.P." indicates a time when LORIANN gave him cash on behalf of LANCE. STANLEY also stated that, once he received the cash from LORIANN, he would then deposit the cash into different bank accounts. STANLEY also indicated that LANCE would direct him to send money to individuals through Western Union. When asked whether there were drugs in his house, STANLEY indicated that there were not, but that he occasionally used cocaine. Following the search, LORIANN and LANCE MOSKOWITZ were arrested. STANLEY was present in court at the time of their arraignment and stated to agents that he would be willing to plead guilty to money laundering in order to help his family.

15. During the investigation, agents received information about a Northfield Bank Money Market Account in the names of STANLEY MOSKOWITZ and his wife pursuant to a Grand Jury subpoena. According to its website, Northfield Bank is insured by the Federal Deposit Insurance Corporation. Based on the following, I believe the Northfield Bank Account was used by STANLEY to launder LANCE's drug proceeds:

a. On or about September 25, 2010, a deposit in the amount of $1,201.59 was made into the Moskowitz Money Market Account, after which the Current Balance of the Moskowitz Money Market Account was $124,056.60. Indicated on September 25, 2010, in the Money Log seized from 20

11

Topside Lane, Staten Island, New York 10309, there is a line
reading "D.P. 1200." Based on my training, experience and
knowledge of this case so far, I believe that the notation
in the Money Log on September 25, 2010 is the $1,201.59 cash
deposit made on that day at Northfield Bank into the
Moskowitz Money Market Account.

b.   On or about Sepetember 26, 2011, there was a
recorded prison phone call between LANCE, STANLEY and a
third party. During the conversation, STANLEY and LANCE
stated, in sum and substance and in part:

STANLEY:   I went, I went and took care of what we said.

LANCE:   Okay.

STANLEY:   It's up to one two four.

LANCE:   On the dot?

STANLEY:   Yeah, and like fifty dollars.

LANCE:   Okay.

STANLEY:   Alright, uh, um, and I got the two from the
what do ya call it.

LANCE:   Beautiful.

Based on my training, experience and knowledge of the case
so far, I believe that STANLEY was telling Lance about the
deposit he made on September 25, 2011 into the Moskowitz
Money Market Account. STANLEY is also giving LANCE the
current balance of the account at that time. STANLEY has no
other reason to provide this kind of detailed information to

12

LANCE regarding a bank account in his and his wife's name than if they are nominee account holders operating the Moskowitz Money Market Account for LANCE because the money belongs to LANCE.

     d.   On or about January 7, 2011, the records from the Moskowitz Money Market Account show there was a $600.00 cash deposit. On or about January 7, 2011 the Moskowitz Money Log indicates a "B. DP 600." Based on my training, experience and knowledge of this case so far, I believe that the "B. DP 600" notation on the Moskowitz Money Log is the $600.00 cash deposit into the Moskowitz Money Market Account.

     e.   Records of the Moskowitz Money Market account

     16.   STANLEY also transferred money out of a safety deposit box for LANCE. On May 5, 2011, the following recorded prison telephone call occurred between LANCE and STANLEY, in sum and substance and in part:

STANLEY:   Yah yesterday we went to TD.

LANCE:     Where?

STANLEY:   TD TD Bank

LANCE:     Yesterday?

STANLEY:   Yeah

LANCE:     What does that mean?

STANLEY:   We we we emptied something

LANCE:      Oh the whole thing

STANLEY:    Yeah we opened it by by us

LANCE:      So you had it with you?

STANLEY:    No no it's hidden somewhere

LANCE:      okay

STANLEY:    At the house we we we can't even send you a
            picture that me and Todd took he took a
            picture of it with me.

[. . .]

STANLEY:    No no no no no we may have to recount it but
            I'm I'm not gonna do it it's crazy

LANCE:      What's that?

STANLEY:    We're we're like 20 40 60 one way or the
            other it's like crazy you know to count

LANCE:      I know but I'm just saying but what he what
            he took I wanna make sure you know it's
            precise

STANLEY:    Yeah it's precise, believe me it's within
            it's within the limits

LANCE:      Did you have fun?

STANLEY:    At the end we were both laughing so hard we
            couldn't count anymore

LANCE:      You guys had a good time

STANLEY:    You know the big ones were all tagged but
            once we got to the small ones it was like oh
            my god when does this end? (I/A) like they
            got in the bank those flippers

LANCE:      Yeah what he just go with a shopping bag

STANLEY:    No a duffle one of the backpacks

LANCE:      He he went by himself?

14

STANLEY:  No I went with him what are you crazy.
Based on my experience, training and knowledge of this
investigation to date, I believe that STANLEY informed LANCE that
STANLEY removed currency from the LANCE's safe deposit box at TD
Bank.  Further, DEA obtained surveillance video from the TD Bank
branch located at 4401 Amboy Road, Staten Island in New York.  On
May 5, 2011, STANLEY and another individual entered TD Bank with
a red backpack.  The video showed the other individual entering
the safe deposit box area with the red backpack that appeared to
be empty.  A short time later, the other individual exited the
safe deposit box area with the red backpack which appeared to
contain something of appreciable weight.  Surveillance video also
showed STANLEY waited for the other individual in the Customer
Service Representative area of the bank.  According to its
website, TD Bank is insured by the Federal Deposit Insurance
Corporation and operates in multiple states.

17.  The CI indicated that STANLEY was aware the LANCE
was a drug dealer.  The CI indicated that prior to his
incarceration LANCE would count money from his illegal drug sales
and then put it into stacks which he would give to STANLEY.
LANCE would tell STANLEY what accounts to deposit the money into.
The CI indicated that prior to his incarceration LANCE was also
involved in selling cocaine and that on occasion LANCE would

15

provide cocaine to STANLEY or STANLEY would take cocaine directly from LANCE's stash.

FURTHER, I respectfully request that arrest warrants be issued for STEVEN SCIARRINO, SALVATORE PARKER, SCOTT MOSKOWITZ and STANLEY MOSKOWITZ so that they may be dealt with according to law.

GIOVANNA CITTI
Special Agent
Drug Enforcement Administration

Sworn to before me this
4th day of June, 2012

U
E

16